Ms. Paula Herzmark Executive Director Department of Local Affairs 1313 Sherman Street, Room 518 Denver, CO 80203
Dear Ms. Herzmark:
This letter is in response to your inquiry of December 12, 1979, in which you requested an attorney general's opinion on your department's interpretation of C.R.S. 1973, 29-1-301 etseq. By your interpretation, the Division of Local Government, in computing a taxing jurisdiction's 7 percent limit, will offset decreases in the assessed valuation of a taxing district due to exclusions or deannexations from the taxing district by increases in valuation due to new construction.
QUESTION PRESENTED AND CONCLUSION
Your request for an attorney general's opinion presents this question:
In computing a taxing district's statutory limit under C.R.S. 1973, 29-1-301 et seq., can the Division of Local Government offset decreases in valuation due to exclusions and deannexations by increases due to new construction?
 My conclusion is "no." Such a practice is in technical violation of C.R.S. 1973, 29-1-302(1). However, it is my opinion that decreases in valuation due to exclusions and deannexations can be deducted from the total valuation for assessment of the preceding year before the 7 percent limit is computed.
ANALYSIS
The general restriction governing this problem is set out in C.R.S. 1973, 29-1-301(1):
 (1) Except as otherwise provided, all statutory tax levies when applied to the total valuation for assessment of the state, each of the counties, cities, and towns not chartered as home rule, and each of the fire, sanitation, irrigation, drainage, conservancy, and other special districts established by law, shall be so reduced as to prohibit the levying of a greater amount of revenue than was levied in the preceding year plus seven percent
except to provide for the payment of bonds and interest thereon.
(Emphasis added.) By this statute, taxing authorities are limited to a 7 percent increase per annum in the property tax revenues they can collect.
However, the 7 percent limit does not apply to "new" property within a taxing district, i.e., that property included within the district since the preceding year's valuation which is attributable to annexation or inclusion of additional land, or improvements thereon, or new construction within the taxing district. C.R.S. 1973, 29-1-302(1) specifically provides:
 In computing the seven percent limit, the increased valuation for assessment attributable to annexation or inclusion of additional land and the improvements thereon within the taxing district for the preceding year or attributable to new construction within the taxing district for the preceding year shall be excluded.
"New" property may thus be taxed outside of the statutory 7 percent limit for the first year it is taxed. Every year thereafter, its valuation shall be considered in computing the 7 percent limit.
Therefore, under the language of the section 29-1-302(1), the Division of Local Government's current practice of using increases in valuation attributable to new construction to offset decreases due to exclusions or deannexations is not technically justified. On the contrary, the division is expressly prohibited from considering the increased valuation due to new construction in computing the 7 percent limit.
The underlying issue, however, is how to compute the statutory 7 percent limit where an exclusion ordeannexation has occurred from a taxing district. In the present case, the substantial IBM plant in Boulder County was excluded from the Longmont Fire Protection District because the plant was annexed to the city of Boulder. The city of Boulder isnot serviced by the Longmont Fire Protection District, but by the City of Boulder Fire Department. IBM filed the petition for exclusion under C.R.S. 1973, 32-5-323, which provides for the exclusion of property within a district when the property is annexed to a city not included within that district.
Unfortunately, C.R.S. 1973, 29-1-301 et seq., is silent on the subject of exclusions. It is therefore necessary to look to the intent of the statute to resolve the matter. As discussed above, the statute's primary purpose is to impose a limitation on the extent to which taxing authorities can increase property taxes. It is my opinion that the legislature has also attempted to design a rational formula for determining that limitation, a formula which reflects the relationship between the revenues collected and the demand for services rendered by a taxing authority. Simply stated that formula is this: A taxing authority is entitled to 1) no more that a 7 percent increase in revenues collected from existing property within a taxing district, which asserts a fairly constant and continuous demand for services,plus 2) revenues collected from "new" property (including new construction), which naturally increases the demand for services.
The intent of the statute to create such a relationship is evidenced by several factors. First, in C.R.S. 1973, 29-1-302(1), the Department of Local Affairs is given the discretion to grant an increase over the 7 percent limit:
 (1) If any board authorized to levy a tax, except school boards, or any officer charged with the duty of levying a tax in any taxing district is of the opinion that the amount of tax limited by section 29-1-301 will be insufficient for the needs of such taxing district for the current year, the question of an increased levy may be submitted to the division of local government in the department of local affairs and it is its duty to examine the needs of such taxing district and ascertain from such examination the financial condition thereof, and, if in the opinion of the division such taxing district is in need of additional funds, the said division may grant an increased levy for such taxing district above the limits specified in this part 3, and such taxing district is authorized to make such excess levy. The division of local government shall not under any circumstance grant an increased levy based upon increased valuation for assessment purposes from reappraisals.
This provision allows the division to grant an increase above the 7 percent limit when it finds that the taxing district is inneed of additional funds to meet its demands for services. This special increase in revenues is not warranted by a mere increase in the assessed valuation on existing property. However, where service demands cannot be met because funds are insufficient under the 7 percent limit, this statute provides the necessary flexibility to correct the insufficiency. Thus, the intent of the legislature is clear that collectible revenues are dependent upon demands for services, not upon the total assessed valuation within a taxing district.
Further evidence of the legislative intent to tie the amount of revenue collected to demands for services is found in the above-quoted last sentence of section 29-1-302(1). By excluding "new" property from the statutory limit and allowing the taxing authority an unrestricted increase due to new construction, annexation, etc., the statute allows for tax revenues to increase in relation to increasing demands for services. An increase in the amount of territory to be serviced, unlike an increase in the value of property already serviced, creates a true increase in demand for services which this statute accommodates.
The general assembly apparently did not contemplate that the demand for services might decrease due to exclusions or deannexations from a taxing district. However, where such a situation does occur, the statutory intent would be best honored by deducting the valuation of the excluded or deannexed property from the total valuation for assessment for the preceding year, then increasing that total by 7 percent. "New" property must still be excluded from computation of the 7 percent limit. In this manner, the 7 percent limit, as it relates to the existing and continuous demand for services, will be preserved.
SUMMARY
To briefly summarize my opinion, the Division of Local Government is statutorily precluded from using the increased valuation for assessment attributable to new construction to directly offset decreases in valuations due to exclusions or deannexations from the taxing district. However, in keeping with the statutory intent to make the amount of revenues collected reflect the demands for services within the taxing district, the division must subtract decreases in valuation due to exclusions and deannexations from the total valuation for the preceding year before computing the 7 percent limit on the current year's levy. Of course, new construction may be taxed outside of the 7 percent statutory limit for the first year it is taxed.
Very truly yours,
 J.D. MacFARLANE Attorney General
TAXATION AND REVENUE
SPECIAL DISTRICTS
C.R.S. 1973, 29-1-301 et seq.
C.R.S. 1973, 29-1-302(1)
LOCAL AFFAIRS, DEPT. OF
Local Government, Div. of
The Division of Local Government may not use increased valuation due to new construction to offset decreases in valuation for assessment due to exclusions or deannexations for the taxing district. However, revenues should reflect demand for services, such decreases should be subtracted from the prior year's valuation before calculating the current 7 percent limit.